```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                        Plaintiff,              04-CR-6058T(P)

            v.                                  DECISION
                                                and ORDER
LEON DASH,

                        Defendant.
_____
```

## INTRODUCTION

Defendant Leon Dash ("defendant") is charged in a nine-count Superseding Indictment with violations of: 18 U.S.C. § 924(c)(1) (unlawful possession of a firearm in furtherance of a drug trafficking crime); 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (possession with intent to distribute more than 5 grams of cocaine base); 21 U.S.C. § 844(a) 21 U.S.C. § 844(a) (simple possession of at least 5 grams of cocaine base); 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (possession with intent to distribute marijuana); and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (being a felon in possession of a weapon).  (Doc. No. 15). By omnibus motion dated November 19, 2004, defendant moves, inter alia, to suppress: (1) tangible evidence seized on April 27, 2003, from a residence located at 242 Parkway Street, Rochester; (2) a photographic identification of defendant made on March 23, 2004; (3) statements made by defendant in the course of a police interrogation on April 27, 2003; and (4) statements made by defendant in the course of a police interrogation on March 27, 2004.  (Doc. No. 25).

On review of the parties' submissions, Magistrate Judge Marian Payson recommended by Report and Recommendation dated April 25, 2005, that: (1) defendant's motion to suppress the tangible evidence found at 242 Parkway Street on April 27, 2003 be denied; (2) defendant's motion to suppress the photographic identification made on March 23, 2004 be denied; (3) defendant's motion to suppress the statements made on April 27, 2003 be granted; and (4) defendant's motion to suppress statements made on March 27, 2004 be denied.[1] (Doc. No. 39). Defendant filed timely objections to Magistrate Payson's Report and Recommendation, claiming that the Magistrate erred in recommending the denial of his motions to suppress the evidence seized at 242 Parkway Street, the photographic identification made on March 23, 2004 and the statements made on March 27, 2004. (Doc. No. 40). For the reasons set forth below, I adopt Magistrate Payson's Report and Recommendation in its entirety, and: (1) defendant's motion to suppress the tangible evidence found at 242 Parkway Street on April 27, 2003 is denied; (2) defendant's motion to suppress the photographic identification made on March 23, 2004 is denied; (3) defendant's motion to suppress the statements made on April 27, 2003 is granted; and (4) defendant's motion to suppress statements made on March 27, 2004 is denied.

---

[1] The other issues raised in defendant's omnibus motion have since been resolved. See Doc. No. 27.

**BACKGROUND**

The facts relevant to defendant's motion are set forth in Judge Payson's April 25, 2005 Report and Recommendation. (Doc. No. 39). In summary, Magistrate Judge Payson conducted a suppression hearing on defendant's motions to suppress on January 3, January 27 and March 2, 2005, during which Both sides presented evidence concerning events which transpired in April 2003 and March 2004.[2]

April 27, 2003

On April 27, 2003, Officer Naser Zenelovic of the Rochester Police Department ("RPD") arrived at a residence located at 242 Parkway Street, Rochester, Apartment 1, in response to a report that a woman was being held against her will by a man with a gun. (Tr. B 9-10). When he arrived, he found the alleged victim, Quiana Barton ("Barton") standing outside a neighboring residence. She informed him that the man inside the apartment was Leon Dash (the defendant) and that he was still in the apartment with the couple's infant child and the firearm, but that she was able to escape under the guise of getting juice for the child. (Tr. B 11).

---

[2]The transcript of the suppression hearing conducted before Judge Payson on January 3, 2005 is filed as Docket Number 33 and will be referenced as "Tr. A ___." The transcript of the suppression hearing conducted before Judge Payson on January 27, 2005 is filed as Docket Number 34 and will be referenced as "Tr. B ___." The transcript of the suppression hearing conducted before Judge Payson on March 2, 2005 is filed as Docket Number 36 and will be referenced as "Tr. C ___."

Officers secured the area around 242 Parkway Street, and called for the defendant to surrender. He stepped from the building and was apprehended by Officer Zenelovic, who pulled him off the porch and handcuffed him. (Tr. B 16). A subsequent search of defendant's person revealed $717 in cash. (Tr. B 21). Barton confirmed that the individual apprehended was Leon Dash. (Tr. B 16).

Once defendant was secured, Officer Zenelovic asked Barton for her consent to search the apartment for guns. (Tr. B 17). Barton agreed and signed a "Consent to Search Form," which was witnessed by Officers Zenelovic and Santori. (Tr. B 17, See also Consent to Search Form, Government's Response In Opposition To Defendant's Omnibus Motion For Relief, Ex. 2 (Doc. No. 26)).

Officer Zenelovic then proceeded to search Barton's apartment, which was the only apartment accessible through the front door of the building.[3] Throughout the search, Barton followed Officer Zenelovic through the apartment. She never objected to any portion of the search, and in fact, identified the door that led to the basement. (Tr. B 19-20). Once in the basement, Officer Zenelovic discovered two firearms, which were wrapped in handkerchiefs and glassine bags. (Tr. B 21, 36). He also recovered ammunition from

---

[3] Two other apartments within the building were accessible by separate entrances. (Tr. B 14).

upstairs in the apartment which did not match either gun found in the basement. (Tr. B 36).

After the search was completed, Officer Zenelovic assisted Barton in preparing an affidavit, in which she identified one of the recovered guns as one she had seen defendant with on a previous occasion. (Tr. B 22, See also Consent to Search Form, Government's Response In Opposition To Defendant's Omnibus Motion For Relief, Ex. 1 (Doc. No. 26)).

After his arrest, Defendant was transported to the Monroe County Public Safety Building where he was interrogated by RPD Investigator David Mace. When Investigator Mace first entered the interrogation room to interview defendant, he found him sleeping on the floor. (Tr. B 45). He woke defendant, permitted him to use the restroom and gave him a drink of water. (Tr. B 45). Investigator Mace then began to inquire about defendant's general background information. Defendant informed him that he had completed tenth grade and that he lived at 68 Earl Street, not 242 Parkway Street. (Tr. B 46, 60). Defendant also informed him that he was not currently under the influence of drugs, but that he had smoked marijuana earlier that day. (Tr. B 46). Investigator Mace noted this information on an RPD Miranda card, at which time he advised defendant of his Miranda rights. (Tr. B 47-48).

<u>March 23, 2004</u>

On the evening of March 23, 2004, RPD Investigator Thomas Donovan responded to a report of a man with a gun in the vicinity of 551 North Goodman Street. (Tr. A 9). Upon arrival at the scene, he was advised by other officers that a suspect known as "Moosey" had been observed with a firearm. Moosey fled once he saw the officers, and disposed of the gun during the ensuing foot chase. (Tr. A 9-10). Investigator Donovan was then informed that Moosey's real name was Leon Dash. (Tr. A 10).

Later that evening, Investigator Donovan was able to retrieve defendant's physical description and biological information from the Morris computer system. (Tr. A 10, 23-25). From that information, Investigator Donovan compiled a photographic array containing defendant's photo and five other similar photos. (Tr. A 10, 23). Investigator Donovan then showed the array to Abdul Shaibi ("Shaibi"), a witness to the earlier events. (Tr. A 13). Shaibi identified defendant's photograph as "Moosey," whom he had seen with a gun earlier that evening. (Tr. 14, 28).

Based on Shaibi's identification, RPD Officers Gourlay and Schoenl prepared a felony wanted package for defendant. (Tr. A 16). The "felony package" indicated that there was probable cause to arrest defendant and contained a crime report, the photograph identified by Shaibi, a felony information and paperwork for the

court. (Tr. A 16-17).[4] Defendant's photograph and biological information were also placed on RPD's "wanted board," so as to inform any officer who stopped defendant that he was wanted. (Tr. A 17).

March 27, 2004

On March 27, 2004 defendant was arrested by RPD Officers Gus Venosa and Edwin Morale in the vicinity of 1530 Norton Street in the course of a traffic stop. (Tr. A 33, C 10-11). He was transported to the Monroe County Public Safety Building, where he was interrogated by Investigator Nicholas Mazzola. (Tr. A 33). Investigator Mazzola advised defendant of his Miranda rights after obtaining certain pedigree information, including whether defendant could read and write. (Tr. A 34-37). When asked whether he understood these rights, defendant acknowledged that he did. (Tr. A 38). At no time during the interrogation did defendant express that he did not understand his rights; nor did he ask to speak with an attorney. (Tr. A 38-39).

Investigator Mazzola began the interview by asking defendant questions designed to elicit a general understanding of defendant's version of events. He then asked defendant to repeat his statement while he took notes. (Tr. A 39). Once he completed the written

---

[4]A felony package is not reviewed by a judge at the time it is issued.

statement, he read the statement to defendant, and asked whether it was accurate. Defendant acknowledged its accuracy and stated that there was nothing further he wished to add. (Tr. A 39). Nonetheless, defendant refused to sign the statement. (Tr. A 42, 44).

## STANDARD OF REVIEW

Pursuant to 29 U.S.C. § 636(b)(1), after the filing of a Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations. After such filing,

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

28 U.S.C. § 636(b)(1).

I apply this standard to the following analysis.

## DISCUSSION

The defendant asks this Court to modify or set aside Magistrate Judge Payson's April 25, 2005 Report and Recommendation in so far as she recommends that: (1) defendant's motion to suppress the tangible evidence seized from 242 Parkway Street on April 27, 2003, be denied; (2) defendant's motion to suppress the

photographic identification made on Mach 23, 2004, be denied; and (3) defendant's motion to suppress the statements he made to the police on March 27, 2004 be denied.[5]

### A. Defendant's Motion to Suppress Tangible Evidence Found at 242 Parkway Street

Defendant argues that the evidence seized from 242 Parkway Street on April 27, 2003 should be suppressed because the police exceeded their authority when they searched the basement of Barton's apartment. Moreover, defendant alleges that Barton's perceived compliance with the search of the basement may not stand as proof of consent because she may have been intimidated by the officers and merely acquiesced to their authority.

A warrantless search of an individual's home is constitutional if conducted pursuant to the valid consent of that individual. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). The government has the burden of proving that consent was voluntary by a preponderance of the evidence. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968), and "[t]he consent should be deemed valid if, given the

---

[5]Defendant does not object to Magistrate Judge Payson's recommendation that his motion to suppress the statements he made on April 27, 2003 be granted. See Defendant's Objections to Report and Recommendation Filed May 10, 2005 (Doc. No. 40). After having reviewed de novo that portion of Magistrate Judge Payson's April 25, 2005 Report and Recommendation, I hereby adopt that portion in its entirety, and defendant's motion to suppress the statements he made to the police on April 27, 2003 is granted. See 28 U.S.C. § 636(b)(1).

totality of the surrounding circumstances, the consent was voluntarily given and not a result of duress or coercion." United States v. Kon Yu-Leung, 9410 F.3d 33 (2d Cir.1990).

Here, there is no question that Barton freely consented to the search of her apartment since she signed an RPD Consent to Search Form. See Consent to Search Form, Government's Response In Opposition To Defendant's Omnibus Motion For Relief, Ex. 2 (Doc. No. 26)). Defendant's assertion that she somehow limited the scope of the search by consenting only to a search of the apartment and not the basement has no basis in the record.

First, the terminology used by Officer Zenelovic in the Consent to Search Form signed by Barton, specifically that the RPD may "conduct a complete search of my home for any guns," is a clear consent and is reasonably understood, under the plain meaning of the words used, to contemplate a search of the entire premises, rather than a search of the apartment only. See Consent to Search Form, Government's Response In Opposition To Defendant's Omnibus Motion For Relief, Ex. 2 (Doc. No. 26)).

Second, during the course of the search, Barton never attempted to limit the scope of her search; nor did she indicate that she felt constrained or in any way intimidated by the police officers. In fact, on the reverse side of the Consent to Search Form she acknowledged that, "[t]he permission is being given by me to members of the Rochester Police Department voluntarily, and

without fear, threats or promises of any kind." Consent to Search Form, Government's Response In Opposition To Defendant's Omnibus Motion For Relief, Ex. 2 (Doc. No. 26)). She followed the officers throughout the apartment, and even assisted the officers in the search, by indicating which door led to the basement. (Tr. B. 19-20). At no point did she protest the search of the basement.

Third, there is no clear distinction between the apartment and the basement from which one reasonably could infer that the basement was not part of Barton's home. For example, the only access to the basement is from a door located in Barton's apartment and no other apartments in the building had access to the basement. (Tr. B 19-20). As such, I find that the police did not exceed their authority when they searched the basement of Barton's apartment for guns.

### B. Defendant's Motion to Suppress the Photographic Identification

Defendant next argues that the photographic identification made by Shaibi on March 23, 2004, should be suppressed because it was unduly suggestive. Specifically, defendant argues that his photograph stood out because only his photo had a full goatee, while the other photographs had considerably less facial hair. Defendant also contends that the positioning of defendant's photo within the array was overly suggestive because "the eye is

naturally drawn" to its location in the middle position of the top row.

A witness's pre-trial identification of a defendant may be excluded from evidence only where the procedure that produced the identification is "so unduly suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." United States v. Bautista, 23 F.3d 726, 729 (2d Cir.1994) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1988)). Nonetheless, "even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." United States v Mohammed, 27 F.3d 815, 821 (2d Cir.1994) (quoting United States v. Simmons, 923 F.2d 934, 950 (2d Cir.1991)).

Here, Magistrate Judge Payson determined that the photographic array used in obtaining Shaibi's identification of defendant was not unduly suggestive, either in the differences in the amount of facial hair between defendant and the others pictured, or in the positioning of defendant's photograph. See Report and Recommendation dated April 25, 2005, p. 17-18 (Doc. No. 39). I agree.

First, as Magistrate Judge Payson pointed out, "the Due Process Clause does not demand that all of the photographs in the array be uniform with respect to a given characteristic." Report and Recommendation dated April 25, 2005, p. 18 (Doc. No. 39)

(citing <u>Jarrett v. Headley</u>, 802 F.2d 34, 41 (2d Cir.1986). Although men pictured in the photographic array at issue had various degrees of facial hair, at least three had goatees similar to that worn by defendant. As such, there is nothing within the array itself which would make defendant's photograph stand out from the others, even if, as the defendant claims, the witness was looking for someone with a goatee.

Second, there is no evidence to support defendant's assertion that the location of his photograph made it more likely that he would be identified by the witness. As such, I find this argument to be insufficient to render the array unduly suggestive.

Moreover, even if the array was impermissibly suggestive, I find that there exist sufficient indicia of reliability to allow the identification to be introduced as evidence against defendant. When reviewing the totality of the circumstances surrounding a pre-trial identification, the court should consider:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation.

<u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972).

Here, Shaibi had ample opportunity to view defendant, and when first questioned by the police identified the man he saw with the gun as "Moosey." (Tr. A 14). Investigator Donovan later learned that "Moosey" was in fact Leon Dash. (Tr. A 10). Shaibi, when

shown the set of pictures, did not hesitate when he pointed to defendant's photograph and identified him as "Moosey," the man he had seen with a gun in the vicinity of 551 North Goodman Street earlier that evening. (Tr. A 14). The short lapse of time between the time when Shaibi first reported the incident and his identification made from the photographic array, some thirteen hours later, further militates in favor of the identification's reliability. Accordingly, I find that the total identification process used contains sufficient indicia of reliability to render the identification admissible.

### C. Defendant's Motion to Suppress the Statements Made on March 27, 2004

Lastly, defendant argues that the statements he made to the police on March 27, 2004 should be suppressed because the government is unable to prove that he knowingly and voluntarily waived his Miranda rights.

Generally, statements made by a defendant while in custody in response to police interrogation are inadmissible, unless the defendant first was made aware of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that privilege. Miranda v. Arizona, 384 U.S. 436, 444 (1966). It is the government's responsibility to demonstrate that a defendant

knowingly and intelligently waived his right against self-incrimination. Id. at 475.

Here, the government argues that Investigator Mazzola duly informed defendant of his Miranda rights, and that defendant knowingly and voluntarily waived them. The evidence presented at the suppression hearing demonstrates this to be credible, and defendant has failed to produce any evidence that would lead to a different conclusion.

Investigator Mazzola testified that he began the interview by engaging defendant in "small talk" in order to gather pedigree information from defendant and to observe whether defendant may have been under the influence of any drugs or alcohol. (Tr. A 36, 38, 50). He surmised that defendant was in fact sober, and informed him of his Miranda rights by reading verbatim from an RPD Miranda card. (Tr. A 38). Defendant then indicated that he understood his rights and that he was willing to speak with Investigator Mazzola. (Tr. A 38). At no time during the interview did defendant indicate that he did not understand his rights; nor did he request to speak with an attorney. (Tr. A 38-39). Investigator Mazzola further testified that throughout the interview, which lasted approximately forty-five minutes, defendant seemed lucid and free of any physical ailment. Tr. A 34-35).

To rebut this testimony, defendant argues that Investigator Mazzola was unable to recall certain key aspects of the

interrogation, including whether defendant was handcuffed while he was questioned. However, I find that Investigator Mazzola's testimony is sufficient to satisfy the government's burden.

## CONCLUSION

For the reasons set forth above, I adopt Judge Payson's April 25, 2005 Report and Recommendation (Doc. No. 39) in its entirety. Accordingly, defendant's motions to suppress (1) the tangible evidence seized from 242 Parkway Street on April 27, 2003, (2) the photographic identification made on March 23, 2004 and (3) the statements made to police on March 27, 2004 are denied and defendant's motion to suppress the statements made to police on April 27, 2003 is granted.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A.Telesca
_____
Honorable Michael A. Telesca
United States District Judge

DATED:   June 7, 2005
         Rochester, New York